Catron, Ch. J.
delivered the opinion of the court.
We are called upon to construe the champerty act of 1821, ch. 66, a matter of more difficulty than is at first apparent, as respects the first section, declaring conveyances to lands void if made contrary thereto.
By the statute of 32 Henry VIII. ch. 9, it was provided, “That no person shall buy or sell, or by any means obtain any pretended rights or titles to any manors, lands, &c. unless he who s.ells, &c. his ancestor, or they by whom he claims, have been in possession thereof, or of the reversion or remainder, or taken the rents or profits, by the space of a year before the bargain, on pain *395 to forfeit the value of the lands so bought or sold.” 5 Comyn’s Digest, 27, American Edition: 15 Viner’s Ab. 154: 2 Statute at large, Lintot’s edition, 97. The for•feiture to be recovered of the vendor or vendee in any of the king’s courts of record, one half to the party suing, the other moiety to the king. By this statute the title is not in express terms declared void, or is it material to enquire what the effect of a conveyance contrary to the statute of Henry VIII. was, as our act of 1805, ch. 11, declared, that thereafter it should be lawful for any ¡person, having right or title to lands, although he might be out of possession, and there might be an adverse possession, to sell and convey the same, and to transfer his interest therein, in as full an [ample a manner •as if he were in actual possession of the land conveyed. This act repeals all laws and parts of laws coming within its purview and meaning. The penalty inflicted by the statute of Henry VIII. was therefore repealed.
The champerty act of 1821 declares, “That no person shall agree to buy, or to bargain or sell, any pretended right or title to any lands or tenements, or any interest therein; and if any such agreement, &c. be made, where the seller has not himself, or by his agent or tenant, or his ancestor, been in actual possession of the same, or of the reversion or remainder, or taken the rents and profits for one whole year next before the sale, such sale, &c. shall be utterly void.”
Thus far the statute pursues substantially the terms of that of 32 Henry VIII. but instead of inflicting a penalty .out of the value of the land sold, declares the agreement to convey, or the conveyance, if any be made, void and of no effect. Such agreement, as by the statute of Henry VIII. would have incurred the penalty, by the first clause of the act of 1831 must be holden void, unless saved by the subsequent exceptions. The settled constructions of the statute of Henry VIII. have come down to us with the statute, and were binding authority before the *396 passage of the act of 1805, not to be disregarded; they will be found in Coke’s Littleton, 369, a, b; and 15 Viner’s Abridgment, 154.
The first proviso and .exception to the enacting clause of the statute of 1821 covers most of the reservations in the British statutes, and some in .addition, in cases of ab* solute sales or mortgage; that is, where the fee is passed or contracted for. It is declared, “That nothing herein contained shall be construed to [extend to] an absolute and bona fide sale or mortgage of lands or tenements, not possessed,, and [or] held adversely at the time of such sale or mortage.”
1st. If the lands be unpossessed, they may be sold. 2d. If they .are in the possession of others not holding adversely to the bargainor, the title may be passed as theretofore. What an adverse holding is must be tested by the common law rules, taken in connexion with the facts. A second exception is made in the act in favor of nonresident bargainors;.as to them, a naked adverse possession will not avoid the contractor deed, but the adverse hold-ing must be by color of title, a deed, devise or 'inheritance. This exception has no application to the present cause, and is only noticed to ascertain the intention of the legislature as to the character of the possession necessary to render null the deed or agreement to sell, that the .possession must be adverse to the grantor or bargainor.
Whether William Rutherford was holding adversely to Andrew Hays at the time of the .sale by. the trustee, was a fact for the jury to find, and which was not submitted to them; the court holding that the deed vesting the land in the trustee having been executed before the passage of the act of 1821, and he having acted in pursuance of the covenant to sell on the failure to pay by Mr. Whiteside, the sale in execution of the trust could well be made, notwithstanding Rutherford, a third person, was at this time in possession of the land, and holding it adversely to *397 Whiteside and Hays. The first inquiry on the charge of 1 Vru the court is, was the sale oí a pretended right. I-he statute holds, that no person shall agree to buy, and no person shall agree to bargain or sell, any pretended right or title to land. The title that Hays, the trustee, did sell, and that Martin did buy, was -not in fact pretended but real, yet the sale and purchase are within the statute, if there be no other reason for excepting of it. Thus Lord Coke (Coke’s Littleton, 368, b,) in his reading of the statute of 32 Henry VIII. holds, “If A be disseized, in this -case A hath a good and lawful right; yet A, being out of possession, granteth to, or contracteth for the land with another, he hath now made his good right of entrie pretenced within the statute, and both the grantor and grantee within the danger thereof.”
It is further liolden by Lord Coke, that he who hath right may eject him who hath none, and sell immediately after the possession is recovered: but the wrong-doer, holding possession by a pretenced title, must have been possessed by himself or others one whole year before he can sell or contract to sell; so that the mere force of taking possession confers no power on the possessor to contract for the sale of title, until the possession be hold-en for one whole year. In both cases the deed, or contract for the title attempted to be sold, is pretended within the British statute, and within ours of 1821.
But it is manifest the sale and conveyance from Hays ■to Martin was deemed valid on another ground; that of the covenant to convey contained in the trust deed to •him who might purchase at the trust sale. This was supposed to be sanctioned by the construction given to another British statute, (28 Edward I. ch. xi,) which declares, “That no officer, nor any other, (for to have part of the thing in plea,) shall not take upon himself the business that is in suit; nor none, upon any such covenant, shall give up his right to another; and if any do, and he be attainted thereof, the taker shall forfeit,” &c. *398 2 Inst. 562. A contract to have part of the thing in suit, is void by this statute, if made ‘hanging’ the suit: yet, says Coke, (2 Inst. 563,) if A. bargain with B, own er of the manor of D, and B is impleaded, and pending the suit enfeoff A, according to the bargain, though this be within the letter of the law, yet it is not within the meaning. Vide 8 Johns. Rep. 483: 5 Comyn’s Digest, Maintenance, a 3. On the construction of the British acts of champerty the settled doctrine is, that a contract to convey vests the equity in the bargainee, who has the right not only to call for the legal title, in fulfilment of the bargainor’s covenant, but the latter, holding as trustee, cannot refuse his name to the purchaser to recover the premises if need be; or can he be permitted to refuse,in a court of equity, to execute the contract by conveying the land. Wood vs. Griffith, 1 Swans. Reports, 55. Taking this to be the true construction of our statute, does Martin stand .on the foot of one contracting by agreement for the legal1'title at a time when such agreement could lawfully be made? Until the trustees’ sale no equity vested in Martin; he had no right to call for the legal title, or any right to use the name of the trustee to recover the land at law. Truly, Hays, by his covenant, might bind himself to sell, but he could not be bound to do an unlawful act, or to do that which Whitesides hinw self could not have done had he retained the title. Surely had Whiteside not conveyed in trust to Hays, his powers to sell would have been as plenary as those of the trustee could be, and it must'be admitted, a sale directly from Whiteside to Martin, Rutherford holding the premises adversely, would have been within the statute and void. We therefore think the circuit court misconstrued the statute, and that the judgment must be reversed.
Judgment reversed.